UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOSEPH MORAN,

                       Plaintiff,

      -against-

                                    COMPLAINT

CAROLE KING a/k/a CAROLE KLEIN also d/b/a
CAROLE KING PRODUCTIONS and
WWW.CAROLEKING.COM, ROCKINGALE RECORDS
CORPORATION, CK ARTMEDIA, INC.,
MUSICTODAY, LLC, CONCORD MUSIC GROUP, INC.,
STARBUCKS CORPORATION also d/b/a
STARBUCKS ENTERTAINMENT and STARBUCKS
HEAR MUSIC, and CINDER BLOCK INC.,

                       Defendants.
------------------------------------------------------------------x

Plaintiff JOSEPH MORAN, by his attorneys, Miller Korzenik Sommers LLP, as and for his Complaint against the Defendants CAROLE KING a/k/a CAROLE KLEIN also d/b/a CAROLE KING PRODUCTIONS and WWW.CAROLEKING.COM; ROCKINGALE RECORDS CORPORATION; CK ARTMEDIA, INC.; MUSICTODAY, LLC; CONCORD MUSIC GROUP, INC.; STARBUCKS CORPORATION also d/b/a STARBUCKS ENTERTAINMENT and STARBUCKS HEAR MUSIC, and CINDER BLOCK, INC. alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for copyright infringement. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338.

2. This Court has personal jurisdiction over the Defendants based, upon information and

1

belief, on their residence in New York, or alternatively, on their doing business in New York, directly and/or through one or more agent(s) and/or corporate entities with which they have exclusive agreements and which are registered and/or licensed to do and/or are doing business within New York State and/or New York City; and/or the transaction of business in New York, directly and/or through one or more agents, such transaction giving rise to this cause of action; and/or the commission of a tortious act in New York, directly and/or through one or more agents, such act infringing upon the Plaintiff's copyrights within New York State; and/or the commission of a tortious act without the State of New York causing injury to Plaintiff in New York in the form of lost New York sales; and Defendants regularly do or solicit business and/or engage in a persistent course of conduct and/or derive substantial revenue from goods used in New York State, or reasonably should have expected their acts to have consequences in New York State and derive substantial revenue from interstate or international commerce.

3. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a).

## THE PARTIES

4. Plaintiff is, and at all times relevant to matters alleged in this Complaint was, a resident of and doing business as a photographer in New York, New York.

5. Defendant Carole King a/k/a Carole Klein ("King") is, and at all times relevant to matters alleged in this Complaint was, a singer, songwriter, musician and Rock and Roll Hall of Fame inductee, who has a residence in New York City, among other places, and is President of Rockingale Records Corporation and, upon information and belief, an officer and/or director of CK Artmedia, Inc.

6. Defendant Rockingale Records Corporation ("Rockingale"), is, and at all times relevant to matters alleged in this Complaint was, a California Corporation, and, upon information and belief, the record label and company through which King creates, produces, publishes, solicits the sale of, sells, ships, and/or distributes and/or markets certain of her audio recordings and/or other products in New York, New York, and elsewhere.

7. Defendant CK Artmedia, Inc. ("CK Artmedia"), is, and at all times relevant to matters alleged in this Complaint was, a California Corporation, and, upon information and belief, a company through which King creates, produces, publishes, solicits the sale of, sells, ships, and/or distributes and/or markets certain art design services and/or products in New York, New York, and elsewhere, and which created and produced the website www.caroleking.com and Tour Program II as defined herein.

8. Upon information and belief, King and/or Rockingale also do business as Carole King Productions, a production entity and as www.caroleking.com, an interactive website, through which King and Rockingale produce, publish, solicit the sale of, sell, ship, distribute and/or market recordings and/or other products in New York, New York, and elsewhere. King, Rockingale, CK Artmedia, Carole King Productions and www.caroleking.com are referred to collectively as "The King Group."

9. The King Group wrongfully, and without authorization or permission, created, produced, published, displayed, copied, solicited for sale, sold, shipped, transmitted, distributed, marketed, licensed, and/or purported to license, both online and otherwise, in New York, New York and elsewhere, Plaintiff's photographs as set forth herein, in, on or with tour program

books and advertising and merchandising materials relating to the Carole King tour called "The Living Room Tour", The Living Room Tour compact disc recordings with inserted booklets, photo tee-shirts, e-cards, streaming video or video clips, network and/or cable television commercials and/or other materials.

10. Defendant Musictoday, LLC ("Musictoday") is, and at all times relevant to matters alleged in this Complaint was, a limited liability company organized and existing under the laws of Virginia and registered to do business in the State of New York, which, upon information and belief, operated and/or marketed products sold from the online store at www.caroleking.com, and as such has wrongfully, and without authorization or permission engaged in the publishing, display, copying, soliciting for sale, selling, shipping, transmitting, distributing and/or marketing of Plaintiff's photographs as set forth herein, in, on or with tour program books, advertising and merchandising materials, The Living Room Tour compact disc recordings with accompanying booklets, photo tee-shirts, e-cards and other materials and/or products.

11. Defendant Concord Music Group, Inc. ("Concord") is, and at all times relevant to matters alleged in this Complaint was, a corporation organized and existing under the laws of the State of Delaware. Upon information and belief, Concord had and has an exclusive arrangement with Defendant Rockingale to create, produce, publish, display, copy, solicit for sale, sell, ship, transmit, distribute, market, license and/or purport to license The Living Room Tour compact disc recordings, and did so wrongfully, and without authorization or permission, create, produce, publish, display, copy, solicit for sale, sell, ship, transmit, distribute, market, license and/or purport to license, in New York, New York and elsewhere, Plaintiff's photographs as set forth

herein, in, on or with The Living Room Tour compact disc recordings along with accompanying booklets and/or other materials or products.

12. Defendant Starbucks Corporation also doing business as Starbucks Entertainment and/or Starbucks Hear Music (collectively "Starbucks"), is, and at all times relevant to matters alleged in this Complaint was, a corporation organized and existing under the laws of the State of Washington and is registered to do business in the State of New York. Starbucks has retail outlets in New York, New York, and interactive websites, from which it displays, copies, solicits the sale of, sells, ships, transmits, produces, distributes and/or markets prerecorded compact discs and other products, and did so wrongfully, and without authorization or permission, display, copy, solicit the sale of, sell, ship, transmit, produce, distribute and/or market, in New York State and elsewhere, Plaintiff's photographs as set forth herein, in, on or with The Living Room Tour compact disc recordings along with accompanying booklets.

13. Defendant Cinder Block Inc. ("Cinder Block") is, and at all times relevant to matters alleged in the Complaint, was a corporation organized and existing under the laws of the State of California. Cinder Block handled merchandising for The Living Room Tour in 2005 and, upon information and belief, as such, wrongfully, and without authorization or permission, displayed, copied, solicited the sale of, sold, shipped, transmitted, produced, distributed and/or marketed, in New York State and elsewhere, Plaintiff's photographs as set forth herein, in, on or with merchandise and other materials described herein.

## BACKGROUND

14. On or about September 27, 2002 at a photo shoot at his apartment, in New York, New

York, Plaintiff took multiple head shots and other photographs of King.

15. At the time, King's manager and/or an authorized agent of The King Group, represented to Plaintiff that the images to be selected from the photographs taken would be used only for editorial self-promotion so that King would have photos to provide to radio stations or newspapers. Plaintiff was also told that it was unlikely that King would be touring in the future. There was no expectation or agreement that the photographs would or could be utilized in connection with a tour, a compact disc recording or for any other purpose.

16. In or about 2003, Plaintiff was paid a total of $2,845.41 as his fee for taking and retouching King's photographs and to reimburse him for costs he incurred in the shoot, including fees of an assistant and makeup artist. The fee did not include any license or permission to King or The King Group to use Plaintiff's copyrighted photographs for any commercial exploitation of the images, and Plaintiff granted no such license or permission to do so. The copyrights in the photographs taken during that 2002 photo shoot of King were retained and are owned solely by Plaintiff.

17. In or about June 2004, Plaintiff was contacted by King's manager and/or authorized agents of The King Group to request permission and the licensing fee to use two of the photographs taken in 2002 ("Moran Photograph 1" and "Moran Photograph 2," respectively) on the front and back covers of a tour program (the "Tour Program I") to be distributed in connection with a concert tour that King was about to begin within a month. King's agents failed to disclose, and at no time was Plaintiff advised, that the Tour Program I would be an elaborate book offered for sale and sold to the public. Instead, Plaintiff reasonably understood that the

program was to be a "Playbill"-like "give-away" used for the concerts.

18. On that basis, Plaintiff suggested that King propose a fee for his consideration so that he could ascertain what was envisioned. He also asked that the tour program show his copyright ownership. Despite repeated requests, Plaintiff never received any fee proposal. At no time did Plaintiff intend that his photographs would be used in Tour Program I without receiving a licensing fee for their use. Although Tour Program I admits Plaintiff's photo copyright ownership in its credit line, Plaintiff, despite repeated demand, was never paid for any use of Moran Photographs 1 and 2 as the front and back covers of Tour Program I.

19. Upon information and belief, Tour Program I, displaying Plaintiff's cover-spanning Moran Photographs 1 and 2, was produced, published, displayed, copied, offered for sale, sold, shipped, transmitted, distributed, marketed and/or licensed by Defendants in conjunction with The Living Room Tour in 2004, and thereafter through 2006.

20. In 2005, Plaintiff discovered that Moran Photographs 1 and/or 2 had been produced, published, displayed, copied, solicited for sale, sold, shipped, transmitted, marketed, licensed and/or purportedly licensed not only in Tour Program I, but also on an internet web banner and other merchandise, including a photo tee-shirt, marketed by Defendants and displayed on www.caroleking.com and elsewhere. When The King Group's authorized agent contacted Plaintiff in June 2005, requesting that Plaintiff provide King with another of his 2002 photographs for display on www.caroleking.com, Plaintiff again requested that the issue of a licensing fee be addressed, not just for Tour Program I, but also for the additional uses that Defendants had made and were continuing to make of the Moran Photographs, without Plaintiff's

knowledge or approval, on other products and in advertisements that Plaintiff had discovered. He was led to believe that The King Group would do so and was told that he would be contacted after King completed her second The Living Room Tour that occurred in or about the summer of 2005, and returned to New York.

21. Instead of contacting Plaintiff, as represented, however, The King Group and the other Defendants ignored Plaintiff and continued to profit from a proliferation of unauthorized uses of Moran Photographs 1 and 2. Plaintiff discovered that photographs that he had taken of King in 2002 had been, and continue to be, produced, published, displayed, copied, solicited for sale, sold, shipped, transmitted, distributed, marketed, licensed, and/or purportedly licensed without his knowledge or authorization, by Defendants in a large variety of forms and for a myriad of commercial products and advertising purposes, some known and, upon information and belief, some yet to be discovered by Plaintiff (plaintiff's photographs used without permission or authorization are collectively, "the Moran Photographs"). They include, but are not limited to:

    a. Moran Photograph 1 and Moran Photograph 2 copied, published and displayed on the front and back covers, respectively, of the Tour Program I which, upon information and belief, was marketed, solicited for sale and sold on both the The Living Room Tours and thereafter in the on-line store at www.caroleking.com and other outlets by Defendants and third parties by arrangement with and/or due to the actions of Defendants;

    b. Moran Photograph 1 copied, published and displayed on the back cover and twice on page 6 in the inside of a redesigned, recently produced, second tour program ("Tour Program